# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**PAMELA D. TUCKER,**

       **Plaintiff,**

            **Case No. 1:23-cv-804**

    **v.**

            **JUDGE DOUGLAS R. COLE**

**DEPARTMENT OF VETERANS**    **Magistrate Judge Litkovitz**
**AFFAIRS,**

       **Defendant.**

## OPINION AND ORDER

In this mixed case,[1] pro se plaintiff Pamela D. Tucker seeks review of an adverse Merit Systems Protection Board (MSPB) determination and various claims brought under the Rehabilitation Act against Defendant Department of Veterans Affairs (the VA). Two categories of matters are before the Court. First are Tucker's various objections to two of the Magistrate Judge's Orders, one of which denied Tucker's motion to impose sanctions on the VA and to transfer the case to the Court's Dayton Division, and the other of which denied "enforcement" of the MSPB's earlier remand order. Because the Magistrate Judge did not err in her determinations, the Court **OVERRULES** Tucker's Objections (Docs. 49, 50, 70).[2] Second is the VA's

---

[1] The term "mixed case" is further defined below, but basically refers to a case in which a plaintiff is asserting both (1) a Civil Service Reform Act claim that is subject to Merits Systems Protect Board jurisdiction, and (2) a claim for violations of statutory rights that exist apart from the MSPB's jurisdiction, such as a discrimination claim under an applicable federal anti-discrimination statute.

[2] Tucker labeled one of her filings as a "Response" to the Magistrate Judge's Order. (Doc. 49). The Court, however, construes that document as an objection. Likewise, Tucker labeled

motion for summary judgment on all of Tucker's claims. Because no genuine disputes of material fact remain, the Court **GRANTS** the VA's Motion for Summary Judgment (Doc. 60), and in doing so **AFFIRMS** the decision of the MSPB.

## BACKGROUND

### A.    Factual Background

This is an employment case. The Cincinnati VA Medical Center hired Tucker as a unit clerk in 2007. (Tucker Depo., Doc. 56-1, #2308). Then, a few years later, Tucker became an administrative support assistant. (*Id.* at #2312–15). In that role, she handled scheduling matters, took meeting minutes, and sometimes helped with payroll. (*Id.* at #2317). And she worked out of an office in the medical center's main hospital building. (Doc. 56-2, #2351). But, in Tucker's view, that office had some problems—namely, mold and other allergens that were exacerbating her asthma and allergies. (Doc. 56-1, #2342, 2440; Doc. 56-2, #2531; Doc. 56-17, #2811–12). So in April 2011, she raised a complaint with the VA. (*See* Doc. 56-10, #2665–66; Doc. 56-11, #2673). The VA, in turn, temporarily assigned Tucker to a different workspace so it could inspect Tucker's office. (*See* Doc. 56-10, #2665–66). A third-party company conducted the inspection and ultimately determined that the office's air quality both (1) fell within the recommended ranges for indoor air, and (2) complied with government regulations. (*Id.*; *see also* Doc. 56-12). So the VA instructed Tucker to return to her office or else provide a doctor's note explaining why she could not do so. (Doc. 56-10, #2665–66). It appears that Tucker never supplied a doctor's note.

---

another one of her filings as a "Motion for Reconsideration," (Doc. 70), which the Court likewise construes as an objection.

A little under a year later, on June 5, 2012, Tucker renewed her concerns about her office's air quality and its impact on her health. (Doc. 56-17, #2811–14). And she requested an accommodation: a new office "with adequate ventilation and with no asbestos and a tolerable amount of mold." (*Id.* at #2812). One of the VA's Reasonable Accommodation Committee members responded to that request, instructing Tucker to submit medical documentation of her alleged disability to support her request. (*Id.* at #2812–13; Doc. 57-13, #3043–44). But rather than submitting medical evidence of the asthma- or allergy-related disability concerns she had raised roughly a year earlier, Tucker apparently provided documentation concerning her service-connected[3] heart and knee conditions. (*See* Doc. 33-1, #398; Doc. 57-13, #3046–47). Tucker also submitted a letter from a VA nurse practitioner explaining that the nurse had evaluated Tucker for respiratory problems, and that Tucker's asthma- and allergy-related symptoms, such as her nasal congestion, "appear[ed] to improve" when Tucker was assigned to a different workspace. (Doc. 34-2, #711). But the letter did not offer a specific diagnosis or find that Tucker's symptoms were in fact related to her work environment. (*See id.*). So the Reasonable Accommodation Committee requested additional medical documentation and information, (Doc. 57-13, #3045), which Tucker failed to provide, (*id.* at #3046–47). As a result, the committee did not grant the accommodation—a workspace change—that Tucker requested. (*See id.*). At some point during all that, Linda Smith, the former director of the Cincinnati VA Medical Center, offered Tucker an opportunity to return to her previous position in

---

[3] "Service-connected conditions" refer to conditions that a person developed, or that worsened, in connection with that person's military service. (*See* Doc. 56-1, #2280–83).

her previous office (and still retain her higher salary), but Tucker declined that offer. (Doc. 56-1, #2388–89; Doc. 57-9, #2977–78).

The committee's denial of Tucker's request prompted her to take matters into her own hands. Rather than reporting to her assigned office, she began working out of alternative workspaces at the medical center. (*See* Doc. 56-17, #2856–58). Each time Tucker did so, one of Tucker's supervisors, Sharon Rucker, marked Tucker absent without leave (AWOL). (*Id.*; *see also* Doc. 56-1, #2329–30, 2376). After Tucker failed to report to her assigned work area thirty-six times, on September 14, 2012, Dr. Gary Roselle—the physician for whom Tucker served as administrative support assistant—recommended her removal (in other words, her termination). (Doc. 56-1, #2314–15; Doc. 56-15, #2763–66). The VA elected to impose a lesser sanction, suspending her for five days. (Doc. 56-16, #2761–62). And it suspended Tucker again, this time for fourteen days, after two more instances of non-reporting. (*Id.* at #2756–60). But when Tucker again failed to report to her assigned work area five more times, Dr. Roselle again recommended her removal for failure to follow instructions. (*Id.* at #2749–50). This time the medical center agreed, removing Tucker, effective March 10, 2013. (*Id.* at #2745–47).

## B. Procedural Background

Among all the back-and-forth about Tucker's workspace, Tucker had filed a complaint with the Occupational Safety and Health Administration (OSHA) in May 2011, (Doc. 56-11, #2674–75), and an equal employment opportunity (EEO) complaint with the VA in June 2012, (Doc. 56-3 at #2576; *see also* Doc. 56-1, #2343). Separately,

after the VA removed her, Tucker appealed the removal decision to the Merit System Protection Board (MSPB). (*See* Doc. 1-7, #75). After an administrative judge for the MSPB upheld the VA's removal decision, (*id.* at #75–80), Tucker petitioned the MSPB for review of the administrative judge's decision, (*see* Doc. 1-6, #41–42). A panel for the MSPB then remanded so that an administrative judge could consider Tucker's various affirmative defenses—failure to accommodate, disparate treatment disability discrimination, age discrimination, retaliation for EEO activity, and whistleblower reprisal—making this a "mixed case" (more on that below). (*See id.* at #48–60). After remand, a new decision from an administrative judge, and a new petition for MSPB panel review, the MSPB panel again affirmed the VA's removal determination in a final order on December 12, 2022. (Doc. 1-4, #23). That order gave Tucker the right to seek review of the MSPB's determination in federal district court. (*Id.* at #31–35).

In its final order, the MSPB made a few determinations. First, it concluded that the VA had proven its failure-to-follow-instructions charge by a preponderance of the evidence, thus justifying Tucker's removal. (Doc. 34-5, #1586). Beyond that, the MSPB found Tucker's various affirmative defenses (i.e., her various discrimination and retaliation theories) unpersuasive. (*Id.* at #1585–92). Most relevant for present purposes, the MSPB determined that Tucker failed to engage in the interactive process that accompanies a request for a reasonable accommodation. (*Id.* at #1588). Specifically, she did not submit the medical information the VA requested and refused to meet with an industrial hygienist to discuss potential solutions to her various complaints about her office's air quality. (*Id.* at #1586–88). And because of

5

that failure, the MSPB concluded that the VA "did not fail to accommodate" Tucker. (*Id.* at #1588). The MSPB also found that Tucker failed to show that her disability was a "motivating factor in her removal." (*Id.*). It noted that she "did not present evidence that she was treated differently than nondisabled employees, provide evidence that her alleged disability played a role in the deciding official's decision, or otherwise show a discriminatory animus on the part of the agency." (*Id.*). And, importantly for Tucker's present appeal, in making those determinations, the MSPB "assum[ed] without deciding that [Tucker] [wa]s a qualified individual with a disability." (*Id.* at #1584).

Unhappy with that outcome, Tucker filed this case. In her Complaint, Tucker appeals the MSPB's final determination. (Compl., Doc. 1, #2). On that front, Tucker claims that the MSPB, in its final decision, both (1) erroneously modified its final order to assume that she is a qualified individual with a disability, and (2) erroneously concluded that Tucker did not engage in the interactive process for a reasonable accommodation request. (Doc. 1-1, #6). Tucker also seems to seek review (her Complaint is difficult to follow) of her claims for disability discrimination (failure to accommodate and disparate treatment), retaliation, and harassment[4] under the Rehabilitation Act, 29 U.S.C. § 791.[5] (Doc. 1, #2; Doc. 65, #4038).

---

[4] As explained below, it's not clear that Tucker's harassment claim is properly before the Court. *See infra* note 10.

[5] Tucker seems to assert her discrimination, retaliation, and harassment claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. (*Compare* Doc. 1-1, #7–8 (referencing the ADA), *with* Doc. 65, #4038 (referencing the ADA and the Rehabilitation Act)). But it's the Rehabilitation Act that applies because Tucker "was a federal employee at the relevant times in this case." *Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023); *see also Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) ("The Rehabilitation Act, not the [ADA],

Tucker originally filed her action in this Court's Dayton seat of court. (*See* Doc. 19, #230). Under local rule, because she was proceeding pro se, the matter was referred to a Magistrate Judge to handle all non-dispositive motions. *See* S.D. Ohio Civ. R. 72.1. In an Order dated December 8, 2023, though, the previously assigned Magistrate Judge transferred this case from the District's Dayton seat of court to its Cincinnati seat of court. (Doc. 19).

Tucker now takes issue with that transfer and with the handling of certain evidentiary matters since the transfer occurred. (Doc. 38). As for the former, Tucker requested that the Court transfer the case back to the District's Dayton seat of court where Tucker initially filed the action. (*Id.* at #1936). And as to the latter, Tucker sought unspecified sanctions against the VA, the VA's counsel, and Magistrate Judge Litkovitz—the Magistrate Judge presiding over non-dispositive motions now that the case is pending in Cincinnati—for "spo[liation]" of the administrative record and for not "exempt[ing]" Tucker from discovery. (*See, e.g.*, *id.* at #1931). Tucker's concerns, as far as the Court can tell, seem to stem from an earlier quibble about the parties' Rule 26(f) report, (*id.* at #1932–33), which itself emanated from Tucker's confusion about how mixed cases such as this one operate, (*see* Doc. 31, #304–05 (explaining Tucker's confusion concerning discovery and the standard of review that applies to her various claims)).

---

constitutes the exclusive remedy for a federal employee alleging disability-based discrimination."). In any event, the Rehabilitation Act incorporates the ADA's standards for determining whether a violation occurred. 29 U.S.C. § 791(f); *see also Bryant*, 72 F.4th at 151–52.

The Magistrate Judge denied Tucker's motion, as to both her request for transfer and for sanctions. (Order, Doc. 45). On the transfer front, the Magistrate Judge determined that Tucker had not timely objected to the previously assigned Magistrate Judge's Order transferring the case, meaning Tucker forfeited the "right to assign error" to that Order (and in any event, did not engage with any of 28 U.S.C. § 1404(a)'s venue-transfer factors). (*Id.* at #2207). Tucker now objects to the Magistrate Judge's findings on those issues. (Docs. 49, 50). Turning to the sanctions question, the Magistrate Judge concluded that (1) the files Tucker contends are missing from the record are in fact in the record, meaning Tucker failed to meet her burden to prove spoliation, and (2) Tucker had failed to object to the Magistrate Judge's earlier Order concerning discovery (which is the proper way to correct a Magistrate Judge's error, not sanctions), and had thus forfeited her "right to assign error" to that determination. (Doc. 45, #2204–07).

But that's not the end of Tucker's complaints. Tucker also recently moved for "enforcement" of the MSPB's "Remand Order Instructions." (Doc. 67). The Magistrate Judge also denied that motion, noting that it's the MSPB's *final* order that is on appeal and that the Court thus lacks the authority to grant the relief Tucker seeks regarding one of the MSPB's *interim* decisions. (Doc. 69, #4124–25). Tucker, however, objects to that conclusion and requests various forms of relief, including "clarif[ication] [of] the legal standing of the issues presented." (Doc. 70, #4126, 4128–29).

Beyond the procedural wrangling, the VA also asks the Court to address the merits of this action. Specifically, it has moved for summary judgment on Tucker's claims. (Doc. 60). In its view, Tucker has made no showing of discrimination, retaliation, or harassment under the Rehabilitation Act meaning those claims fail as a matter of law. (*Id.* at #3146–61). And the VA says the Court should affirm the MSPB's decision concerning Tucker's removal because the MSPB did not err in (1) assuming Tucker had a qualified disability, and (2) concluding that Tucker failed to engage in the interactive processes for her reasonable accommodation request. (*Id.* at #3161–62). Tucker responded, (Doc. 65), and the VA replied, (Doc. 66). So the motion is ripe for review.

## LEGAL STANDARD

### A. Objections to Nondispositive Matters

When a party timely objects to a Magistrate Judge's order concerning a nondispositive matter, the Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). In other words, a district court must "review findings of fact for clear error and [] review matters of law de novo." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quotation omitted). A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). And "an order is contrary to the law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (cleaned up).

9

B.     **Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). Once the movant meets its burden, though, the nonmoving party may not rest on its pleadings, but rather must come forward with significant probative evidence to support its claim. *Celotex,* 477 U.S. at 324; *Lansing Dairy,* 39 F.3d at 1347. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)). And in making that determination, the Court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir. 1995).

## LAW AND ANALYSIS

The Court begins with Tucker's objections to the Magistrate Judge's Orders. Because the Magistrate Judge did not err in her determinations, the Court overrules Tucker's objections. The Court then turns to the VA's motion for summary judgment.

Ultimately, no genuine disputes of material fact remain, so the Court grants the VA's motion and affirms the MSPB's determination concerning Tucker's removal.

Before turning to the matters at hand, though, one thing bears further explanation: what exactly is a "mixed case"? The Civil Service Reform Act provides a mechanism for federal employees to challenge serious personnel actions like removal from service. *Fuerst v. Sec'y of the Air Force*, 978 F.3d 369, 371 (6th Cir. 2020). A federal employee unhappy with their employer's action can appeal that decision to the MSPB. *Id.* (citing 5 U.S.C. § 7513(d)). "Such an appeal may merely allege that the agency had insufficient cause for taking action" under the Civil Service Reform Act. *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). But the appeal might also "charge the agency with discrimination prohibited by another federal statute," such as the Rehabilitation Act. *Id.*; *see* 5 U.S.C.§ 7702(a)(1). The latter set of cases—the ones that allege a serious adverse personnel action based on discrimination—are called "mixed cases." *Kloeckner*, 568 U.S. at 44; *see* 29 C.F.R. § 1614.302 ("A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination."). If the employee ends up displeased with the MSPB's decision, "she can seek judicial review once the [MSPB]'s order becomes final." *Fuerst*, 978 F.3d at 371.  (citing 5 U.S.C. § 7703(a)(1)). When an employee merely alleges that that the agency had insufficient cause for the adverse action, the employee seeking judicial review must file in the Federal Circuit. *Id.* (citing 5 U.S.C. § 7703(b)(1)(A)). But when an employee has brought a mixed case,

the employee files suit in federal district court. *Kloeckner*, 568 U.S. at 45; *Fuerst*, 978 F.3d at 371 (citing 5 U.S.C. § 7703(b)(2).

Mixed cases involve different standards of review: one standard applies to the MSPB's determination on the personnel action, and another standard applies to the discrimination claims. As for the former—the MSPB's decision—the Court reviews the administrative record and sets aside any action that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)–(3). When it comes to the latter—the discrimination claims—the Court reviews those de novo.[6] *Id.* § 7703(c).

With that background in mind, turn to the objections and motion at hand.

## A. The Court Overrules Tucker's Objections to the Magistrate Judge's Orders.

Tucker objects to three of the Magistrate Judge's determinations: (1) the denial of Tucker's motion for sanctions, (Doc. 49), (2) the denial of her motion to transfer venue, (Doc. 50), and (3) the denial of her motion to enforce the MSPB's remand order instructions, (Doc. 70). The Court, recall, reviews the Magistrate Judge's factual determinations for clear error and legal determinations for whether they're contrary

---

[6] The Court refers to it as a "review" because the plaintiff must present, and the MSPB must consider, the discrimination claims as part of deciding whether the removal was justified. *See Spranger v. Frank*, 15 F.3d 1089, No. 92-15812, 1993 WL 484721, at *2 (9th Cir. Nov. 24, 1993) (Table) ("A plaintiff must present a discrimination claim to the MSPB in order to preserve his or her right to raise it in federal court. Such claims must be brought as an affirmative defense to the discharge." (citation omitted)). The MSPB undertook that consideration here. (Doc. 34-5, #1583).

to law. And in doing so, the Court will take each denial—the sanctions denial, the transfer denial, and the enforcement denial—in turn.

Start with sanctions. Tucker sought sanctions against the VA, the VA's attorney, and Magistrate Judge Litkovitz for issues related to the administrative record and the standard of review that applies. (*See generally* Doc. 38). Tucker's frustrations on those fronts seem to arise from the mixed nature of her case—she's appealing both the aspect of the MSPB's decision that affirms her removal from the VA and the aspect rejecting her claims for under the Rehabilitation Act. (Doc. 1, #2). As the Magistrate Judge explained to Tucker at the parties' scheduling conference (and again in a May 28, 2024, Order), because this is a mixed case, it proceeds on two tracks. (Doc. 31, #303–04). That is, the Court reviews the MSPB appeal based on only the administrative record and under an arbitrary and capricious standard. (*Id.* at #307 (quoting 5 U.S.C. § 7703(c))). But the Court reviews Tucker's discrimination claims de novo, meaning that those claims are subject to traditional discovery under the Federal Rules of Civil Procedure 26. (*Id.* at #307–09).

As Tucker sees it, though, that's all wrong. She seems to believe that the Court should review all her claims based on the administrative record alone, making discovery inappropriate. (*See, e.g.*, Doc. 38, #1931 (arguing that she should be "exempt[] from matters under Civ. R. P[.] 26(f)"); Doc. 49, #2221–22 (claiming the same)). And her objections to the Magistrate Judge's Order merely reiterate that mistaken belief that the Court should adjudicate her discrimination claims based solely on the MSPB's administrative record. (Doc. 49). Tucker argues that sanctions

were appropriate because (1) the Magistrate Judge erred in "[s]eparat[ing]" her MSPB-related appeal from her discrimination claims and authorizing discovery on the discrimination claims, and (2) the VA and its counsel violated various rules by seeking to engage in said discovery. (*Id.* at #2221–24).

Tucker's problem, though, is that the Magistrate Judge did not "separate" the MSPB appeal from the discrimination claims. Rather, the Magistrate Judge explained the relevant standards of review and accurately found that discovery is appropriate for the discrimination claims. In other words, the Magistrate Judge did not misapply the law or err in any fashion. Accordingly, the Court **OVERRULES** Tucker's Objections (Doc. 49) related to her motion for sanctions.

Turn now to the venue transfer issue. Tucker initially filed this case in the District's Dayton seat of court. (*See* Doc. 19, #230). But on December 8, 2023, the previously assigned Magistrate Judge transferred the case to the District's Cincinnati seat of court, because (1) venue is proper here under 28 U.S.C. § 1391(e)(1) given that a substantial part of the events giving rise to the action occurred at the VA Medical Center in Cincinnati, and (2) under 28 U.S.C. § 1404, it was in the interests of justice to transfer the case. (*Id.* at #230–32). Tucker did not timely object to that Order.

Instead, eight months later, she moved for a change of venue asking the Court to transfer the case back to Dayton. (Doc. 38, #1936). But as the Magistrate Judge correctly noted in her Order denying transfer back to Dayton, Tucker's request was untimely and wholly unsupported. (Doc. 45, #2207). More to the point here, Tucker's objections are unpersuasive. She appears to dispute whether she had the opportunity

to object to the initial Order transferring the case to Cincinnati. (Doc. 50, #2228). But it's unclear how or why she allegedly didn't have the opportunity to do so. In any event, Tucker has not demonstrated how the determination that Cincinnati is the most appropriate venue was in any way clearly erroneous or contrary to law. Accordingly, the Court **OVERRULES** Tucker's Objections (Doc. 50) related to her motion to transfer venue.

That leaves Tucker's most recent objection, in which Tucker complains that the Magistrate Judge shouldn't have denied her motion to enforce the MSPB's "Remand Order Instructions." (Doc. 70). But as the Magistrate Judge correctly determined, (Doc. 69), the Court lacks the authority to enforce the MSPB's interim order. *See Hatcher v. Runyon*, No. 98-1714, 1999 WL 645410, at *1 (6th Cir. Aug. 13, 1999) (Table) ("A final order or decision issued by the MSPB constitutes a 'judicially reviewable action.'" (quoting 5 U.S.C. § 7702(a)(3))). The Court thus **OVERRULES** Tucker's Objections (Doc. 70) related to her motion for enforcement. And the Court further **DENIES AS MOOT** the various requests for relief Tucker raises in her Objection given that the Court grants summary judgment in the VA's favor, thus terminating this case on the merits.

## B.   The VA is Entitled to Summary Judgment.[7]

With Tucker's various procedural objections addressed, the Court turns to the merits of this dispute. The VA moves for summary judgment on all of Tucker's claims.

---

[7] In her opposition, Tucker requests that the Court deny summary judgment to the VA and instead grant it in her favor. (Doc. 65, #4037). Two problems with that request. First, even if the Court treated Tucker's opposition as a motion for summary judgment, it was untimely filed on April 18, 2025, after the dispositive motion deadline of April 3, 2025. (Doc. 52).

(Doc. 60). On that score, the Court begins with Tucker's appeal of the MSPB's determination, which it reviews under an arbitrary and capricious standard. The Court then turns to Tucker's discrimination, retaliation, and harassment claims, which it reviews de novo—in other words, the Court just applies the traditional summary judgement framework to these claims, without deference to any MSPB determinations on them. Ultimately, all Tucker's claims fail as a matter of law, so the Court affirms the MSPB's determination and dismisses Tucker's other claims with prejudice.

### 1. The MSPB Did Not Err in Affirming Tucker's Removal.[8]

Tucker raises two reasons she believes the MSPB erred in affirming her removal from the VA: (1) it erroneously modified its final order to assume that she is a qualified individual with a disability, and (2) it erroneously concluded that Tucker did not engage in the interactive process for a reasonable accommodation request. (Doc. 1-1, #6). Neither persuades.

The Court can make short work of Tucker's first complaint because, despite her belief to the contrary, the MSPB's decision to assume Tucker had a qualified disability in no way prejudiced her. Rather, it favored her. What's more, courts often

---

Second, such a motion would fail on the merits because, as explained in this Opinion and Order, the VA is entitled to summary judgment.

[8] Tucker raises a host of new assignments of error in her opposition. (*See* Doc. 65, #4041–49). But problematically for Tucker, she cannot assert new assignments of error now that she did not originally assert in her Complaint. *Ault v. Medina Med. Invs., LLC*, No. 1:06-cv-1113, 2007 WL 81853, at *3 (N.D. Ohio Jan. 8, 2007) ("It is axiomatic that a plaintiff cannot add new claims to her complaint in an opposition."). The Court therefore declines to consider Tucker's newly asserted assignments of error.

employ this tactic when reviewing a plaintiff's claims. *See, e.g., Childers v. Casey Cnty. Sch. Dist. Bd. of Educ.*, No. 23-5713, 2024 WL 3623527, at *4 n.3 (6th Cir. Aug. 1, 2024) ("[W]e may assume, without deciding, that she made a prima facie case and proceed to the 'ultimate issue.'" (citation omitted)). In other words, the MSPB did not act arbitrarily or otherwise abuse its discretion by assuming Tucker had a qualified disability for purposes of its failure to accommodate analysis.

Nor did the MSPB act arbitrarily in concluding that Tucker did not engage in the interactive process and that her failure to accommodate defense failed as a result. In making that determination, the MSPB relied on evidence that Tucker did not provide the VA the medical documentation that the Responsible Accommodation Committee reasonably requested, and did not meet with the industrial hygienist the VA offered. (Doc. 34-5, #1586–88). And the MSPB expressly considered Tucker's note from the VA nurse practitioner, which "relayed [Tucker]'s self-report of a suspected mold problem in her assigned office," but found that Tucker's subsequent failure to submit additional information concerning that letter further demonstrated a failure to engage in the interactive process. (*Id.* at #1587–88). The MSPB's determination, in other words, was "supported by substantial evidence" and resulted from a "deliberate principled reasoning process." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064–65 (6th Cir. 2014) (cleaned up). And that means it was not arbitrary or capricious. As a result, the Court **AFFIRMS** the MSPB's decision affirming Tucker's removal from the VA.

### 2. Tucker's Discrimination, Retaliation, and Harassment Claims Fail.[9]

Next up are Tucker's claims for discrimination (which she asserts as both a failure to accommodate claim and a disparate treatment claim), retaliation, and harassment, which, as a reminder, the Court reviews de novo. Take each in turn.

### a. Failure to Accommodate Claim

Tucker first claims that the VA discriminated against her by failing to accommodate her disability. (*See* Doc. 1-1, #6–12). But the record here tells a different story. To see why, start with the basics of a failure to accommodate claim.

When an employee with a qualifying disability requests a reasonable accommodation to help her perform an essential function of her job, that "triggers 'an informal, interactive process'" between the employee and employer. *Kovac v. Superior Dairy, Inc.*, 998 F. Supp. 2d 609, 619 (N.D. Ohio 2014) (quoting 29 C.F.R. § 1630.2(o)(3)). The goal of that process is to identify a reasonable accommodation that helps the employee overcome the limitations resulting from her disability without unduly burdening the employer. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). And, importantly, *both* parties must engage "in good faith." *Id.* So if the employer fails to participate, it may "face[] liability under the ADA if a reasonable accommodation would have been possible." *Kovac*, 998 F. Supp. 2d at 619. But when the employee refuses to participate "or withholds essential information,"

---

[9] Tucker's opposition also raises myriad new "charged claims" beyond failure to accommodate, disparate treatment disability discrimination, retaliation, and harassment. (See Doc. 65, #4040). But as the Court already explained, *see supra* note 8, an opposition brief is not the appropriate vehicle to raise claims. *Ault*, 2007 WL 81853, at *3. The Court therefore declines to address those additional claims.

then the employer is not liable for failing to accommodate. *Id.* at 619–20. And especially relevant here, when an employee "fail[s] to provide requested medical documentation supporting an accommodation," that "precludes a failure to accommodate claim." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020).

That latter scenario—the employee withholding requested medical information—is just what happened here. After Tucker requested a new workspace, (Doc. 56-17, #2812), the VA's Reasonable Accommodation Committee requested medical documentation supporting Tucker's claimed disability that included a diagnosis, prognosis, and certain other information, (Doc. 57-13, #3043–44). Tucker, in turn, provided the committee two things. First, she submitted documentation related to her service-connected heart and knee conditions. (Doc. 33-1, #398; Doc. 57-13, #3046–47). The committee rejected that information because it needed medical documentation that "explain[ed] the condition for which [Tucker was] ultimately claiming reasonable accommodation." (Doc. 57-13, #3046). In other words, evidence of heart and knee conditions didn't support an air-quality-based accommodation request that Tucker had based on her asthma and allergies. Second, Tucker provided a nurse practitioner's note that listed Tucker's evaluation history and said that "Tucker's symptoms appear[ed] to improve when she was assigned to a different work environment than [her] original office." (Doc. 34-2, #711). But since that note did not provide a diagnosis or prognosis, the committee requested further medical documentation. (Doc. 57-13, #3045). Tucker, however, never provided it. (*Id.* at

#3046–47). And her deposition sheds some light on why Tucker perhaps believed she didn't need to provide the requested documentation: she believes that having *any* disability (like a heart or knee issue) entitles her to an accommodation for a completely different disability (like asthma or allergies). (Doc. 56-1, #2411). But that's not how failure to accommodate claims work. *See Tchankpa*, 951 F.3d at 812 ("[E]mployers may require documentation supporting an employee's *requested* accommodation." (emphasis added)).

In short, Tucker's refusal to participate in the interactive process in good faith (by failing to provide the medical documentation supporting her workspace-change accommodation) means the VA did not fail to accommodate her. *Id.*

### b.    Disparate Treatment and Retaliation Claims

Tucker next asserts disparate treatment and retaliation claims based on the VA suspending and ultimately removing her. The Court analyzes those claims, which Tucker advances via circumstantial evidence (or, really, no evidence at all), under the *McDonnell Douglas* burden-shifting framework. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395–96 (6th Cir. 2017). In that three-step framework, Tucker must first establish a prima facie case of her respective claim. *Id.* If she does, the burden shifts to the VA to show "a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* And if the VA meets its burden, then Tucker is left to show, by a preponderance of the evidence, that the VA's provided reason amounts to "pretext designed to mask unlawful discrimination" or "retaliation." *Id.*

Assuming without deciding that Tucker has made a prima facie case of disparate treatment disability discrimination and retaliation (which, to be clear, *helps* Tucker), those claims still fail. To start, the VA had a legitimate, non-discriminatory reason for suspending and then removing Tucker: she failed to follow instructions to report to her originally assigned workspace. *EEOC v. St. Joseph Paper Co.*, 557 F. Supp. 435, 439 (W.D. Tenn. 1983) ("Failure to follow instructions and insubordination are legitimate, non-discriminatory reasons for discharging an employee."); *see also Liebau v. Dykema Gossett, PLLC*, No. 23-1301, 2024 WL 1739750, at *8 (6th Cir. Apr. 23, 2024) (finding failure to follow instructions was a legitimate reason).

More than that, Tucker failed to put forth any evidence that the VA's provided reason was pretextual. To establish pretext, a plaintiff can show the employer's provided reasons (1) lack a factual basis; (2) "did not actually motivate the action"; or (3) could not warrant the action. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Tucker has done none of those things. And, frankly, that's a tall order anyway. After Tucker made an accommodation request, the Reasonable Accommodation Committee instructed Tucker to return to her normal office or else provide a doctor's note indicating why she could not do so. (Doc. 57-13, #3046–47). Rather than doing either, Tucker began reporting to other work locations within the medical center, leading Tucker's supervisor to report Tucker AWOL thirty-six times. (Doc. 56-15, #2763–66; Doc. 56-17, #2856–58). That led to a five-day suspension. (Doc. 56-15, #2761–62). And after two more instances of non-reporting, a fourteen-day

suspension. (*Id.* at #2756–60). Then, after five more AWOL demerits, Tucker's removal. (*Id.* at #2745–47, 2749). So it seems Tucker's repeated failures to follow instructions provided ample factual basis to suspend and remove her, and her failure in that regard both motivated and warranted the VA's actions. Tucker, for her part, put forth no evidence suggesting anything to the contrary. Based on all that, no reasonable jury could conclude that the VA's decision to remove Tucker was because of discrimination or retaliation, meaning Tucker's claims fail.

### c. Harassment Claim[10]

Finally, Tucker asserts a "harassment" claim, which is a hostile work environment claim. She seems to base that claim on a couple emails she received and

---

[10] The administrative record suggests that Tucker may have forfeited this claim. True, the terms "harassment" and "hostile work environment" appear in some administrative filings and testimony elicited from witnesses in the administrative proceedings. (*See, e.g.*, Doc. 34-2, #663, 667, 680, 1045–46, 1048, 1060, 1071, 1079, 1283–85). But, on remand from the MSPB panel, the administrative judge tasked with considering Tucker's various affirmative defenses ordered Tucker to identify "with specificity" any affirmative defenses that she was pursuing other than disability discrimination, age discrimination, and retaliation. (Doc. 34-4, #1195). In response, Tucker submitted a filing identifying the following defenses: (1) failure to accommodate, (*id.* at #1225–27); (2) disparate treatment based on her disabilities, (*id.* at #1227–32); (3) age discrimination, (*id.* at #1233); (4) and retaliation for EEO complaints and whistleblowing, (*id.* at #1233–39). The VA then responded to those defenses. (*Id.* at #1244–48). And, following a prehearing conference to define the issues in the case, (*id.* at #1344–51), the administrative law judge considered those defenses, (*id.* at #1457–74), in a decision that the MSPB panel affirmed in its final order, (*id.* at #1583–97). The MSPB's task in mixed cases is to "decide both the issue of discrimination and the appealable action." *Fuerst*, 978 F.3d at 369. And a plaintiff "must present a discrimination claim to preserve h[er] right to raise the claim in federal court." *Borkins v. UPS*, No. 94-1589, 1994 WL 659197, at *1 (6th Cir. Nov. 22, 1994) (citing *Hays v. Postmaster Gen. of United States*, 868 F.2d 328, 330 (9th Cir. 1989)); *see also Spranger*, 15 F.3d 1089, 1993 WL 484721, at *2 ("[A] mixed-case appeal must 'state specifically how the agency discriminated against the appellant.' Although an appellant may raise a new discrimination claim as of right prior to the final conference held to define the issues in the case, a new claim cannot be raised after that time except for demonstrated good cause." (citations omitted)). All this suggests that Tucker cannot now elect to pursue a new hostile work environment theory. But, giving Tucker—a pro se Plaintiff— the benefit of the doubt, the Court considers the claim on the merits.

her ultimate removal from the VA. (*See* Doc. 1-1, #13–15). But the claim ultimately doesn't pass muster.

For one, the Sixth Circuit "has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020) (quotation omitted). "[O]ccasional offensive utterances do not rise to the level required to create a hostile work environment." *Id.* (quotation omitted). Tucker premised her claim, in part, on her supervisor "threaten[ing]" her and a colleague sending an ominous email. (*See* Doc. 1-1, #14). But as the VA points out, other than Tucker's initial allegations, "there is no *evidence* of harassing conduct." (Doc. 60, #3161 (emphasis added)). And that won't do to survive summary judgment. *Celotex,* 477 U.S. at 324.

For another, "[a] suspension, like a termination … constitutes a separate actionable unlawful employment practice," and therefore "cannot properly be characterized as part of a continuing hostile work environment." *Sasse v. U.S. Dep't of Lab.*, 409 F.3d 773, 783 (6th Cir. 2005) (quotation omitted); *see also Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 840 (6th Cir. 2024) (same), *cert. denied*, 144 S. Ct. 2689 (2024). So evidence concerning Tucker's removal, had she put forth any, could not have supported her hostile work environment claim anyway.

Absent evidence of a hostile work environment, this claim fails.

## CONCLUSION

For the reasons discussed, the Court **OVERRULES** Tucker's Objections (Docs. 49, 50, 70), **DENIES AS MOOT** the various requests for relief Tucker raises in her

third Objection (Doc. 70), **AFFIRMS** the decision of the Merit Systems Protection Board, and **GRANTS** the VA's Motion for Summary Judgment (Doc. 60). The Court therefore **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

      **SO ORDERED.**

October 21, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**